# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEKSANDR V.M.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,<br><br>Respondent. | Case No. 1:25-cv-01431- JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS, GRANT PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT RESPONDENT TO PROVIDE PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE<br><br>(ECF Nos. 1, 12) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends denying Respondent's motion to dismiss, granting the petition for writ of habeas corpus, and ordering that Respondent provide Petitioner with an individualized bond hearing before an immigration judge at which the government must justify Petitioner's continued detention by clear and convincing evidence.

## I.

## BACKGROUND

Petitioner is a noncitizen currently detained at the Golden State Annex Detention Facility pending his ongoing removal proceedings. Petitioner has been detained since April 22, 2025.

---

[1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as requested by Petitioner and suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

(ECF No. 1 at 5.[2]) On May 7, 2025, an immigration judge ("IJ") denied Petitioner's request for a custody redetermination pursuant to 8 C.F.R. § 1236, finding that the immigration court lacked jurisdiction because "current regulations . . . preclude an Immigration Judge from redetermining the custody status of arriving aliens in removal proceedings." (Id. at 22.)

As noted by Respondents, (ECF No. 12 at 1), Petitioner previously filed a habeas petition in this Court. See No. 1:25-cv-00953-SKO, ECF 1.[3] In the previous petition, Petitioner asserted that his detention violated 8 U.S.C. § 1254a and due process because he had been granted Temporary Protected Status ("TPS").[4] Id. On October 10, 2025, this previous petition was denied. The Court held: "Because Petitioner is currently without TPS status, detention is not unlawful." Id., ECF No. 19 at 4.

On October 27, 2025, Petitioner filed the instant petition for writ of habeas corpus, asserting that his prolonged detention without a bond hearing violates his right to procedural due process. (ECF No. 1.) On December 29, 2025, Respondent filed a motion to dismiss and response to the petition. (ECF No. 12.) On January 5, 2026, Petitioner filed a motion for

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

[3] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. See Wyatt v. Terhune, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

[4] "Pursuant to the TPS statute, 8 U.S.C. § 1254a, the DHS Secretary may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other 'extraordinary and temporary conditions,' unless the Secretary 'finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States.'" Nat'l TPS All. v. Noem, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." Nat'l TPS All., 150 F.4th at 1010 (citing 8 U.S.C. § 1254a(a)(1), (b)(2)). "Other restrictions apply: applicants must be 'admissible' under the immigration laws, id. § 1254a(c)(1)(A)(iii); they must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States,' id. § 1254a(c)(2)(B)(i); and they risk revocation of status if the Secretary 'finds that the [noncitizen] was not in fact eligible for such status,' id. § 1254a(c)(3)(A)." Nat'l TPS All., 150 F.4th at 1010. "An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254(d)(4).

temporary restraining order, which was denied by the assigned district judge as untimely. (ECF Nos. 14, 19.) Petitioner has submitted various additional filings in support of his petition. (ECF Nos. 16–18, 21–24.)

## II.

## DISCUSSION

### A. Motion to Dismiss

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Here, Respondent asserts that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b),[5] which the Supreme Court has described as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).

> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a

---

[5] Petitioner does not contest this assertion. For purposes of the instant petition, the Court assumes that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). However, the Court notes that Petitioner alleges that from December 13, 2021 until his arrest on April 22, 2025, Petitioner was "at liberty under supervision." (ECF No. 23 at 2.)

§ 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Ibid.

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas

4

by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Demore, 538 U.S. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that "§§ 1225(b)(1) and (b)(2) contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the

district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

There has been a dearth of guidance regarding the point at which an immigration detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024).

In upholding mandatory detention under 8 U.S.C. § 1226(c) in Demore, the Supreme Court made repeated references to the "brief" and "limited" timeframe at issue. See Demore, 538 U.S. at 513 ("brief period"); id. at 523 (("brief period"); id. at 526 ("limited period"); id. at 529 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); id. at 531 ("limited period"). Demore specifically noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However, "[t]hirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a

little more than a year." Rodriguez v. Nielsen, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citing Letter from Acting Solicitor General Ian H. Gershengorn to Hon. Scott S. Harris (Aug. 26, 2016), at 2, 3, Demore v. Kim, 538 U.S. 510 (2003) (No. 01-1491)). "The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years." Rodriguez, 2019 WL 7491555, at *5 (citing Joint Appendix (Table 20) (Aug. 26, 2016), Jennings v. Rodriguez, 583 U.S. 281 (2018) (No. 15-1204)). The Government Accountability Office conducted a study and "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." Rodriguez, 2019 WL 7491555, at *5 (citing United States Government Accountability Office, Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges 33 (2017), https://www.gao.gov/assets/690/685022.pdf).

As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in Demore. See Demore, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself*." (emphasis added)); Black v. Decker, 103 F.4th 133, 149 n.22 (2d Cir. 2024) ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]"). In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to bring an as-applied challenge: "Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. See Black, 103 F.4th at 149 (*Demore* "said nothing about whether due process may *eventually* require a hearing. If *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider ... in the first instance' the detainees' argument that '[a]bsent ... a bond-hearing requirement, ... [section 1226(c)] would violate the Due Process Clause of the Fifth Amendment.'" (alterations in original) (quoting ///

7

Jennings, 583 U.S. at 291, 312)). Moreover, Demore does not directly address the issue presented here: whether § 1225(b) as applied to Petitioner is unconstitutional.

To the extent Respondent relies on Jennings to argue that Petitioner's as-applied constitutional challenge is foreclosed, Jennings held the Ninth Circuit erred in finding a *statutory* right to *periodic* bond hearings under § 1225(b) and § 1226(a). However, Jennings did not address the constitutional arguments. Therefore, Respondent's reliance on Jennings to dismiss Petitioner's constitutional claim is not persuasive. To the extent Respondent relies on Keo v. Warden, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392 (E.D. Cal. Apr. 7, 2025), appeal dismissed, No. 25-3546, 2025 WL 2528945 (9th Cir. June 27, 2025), to argue that Petitioner's as-applied constitutional challenge is foreclosed, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S. 692, 709 n.7, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).

Based on the foregoing, the undersigned recommends finding that Petitioner's as-applied constitutional challenge is not foreclosed, and thus, dismissal of the petition is not warranted.

**B.  Due Process Analysis**

Petitioner contends that "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and even absent a bright-line six-month standard, his "detention, without any individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at 7, 8.) Respondent notes that "this Court has repeatedly refused to find a specific time limit past which a noncitizen's detention will be considered presumptively violative of due process," and that the "use of a multi-factor balancing test to analyze Petitioner's statutorily-compelled detention during the pendency of his removal proceedings is unsupported by Supreme Court authority." (ECF No. 12 at 4, 5.) Respondent argues that this "Court should decline to engage in any of the various multi-factor balancing tests applied by some courts in the Ninth Circuit in

analyzing a noncitizen's procedural due process rights," but "even if the Court were to apply a multi-factor balancing test to Petitioner's detention without a bond hearing, neither of the most common tests would favor the Petitioner." (ECF No. 12 at 6, 7.)

Courts in the Ninth Circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez, 2019 WL 7491555, at *6 (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the

Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black, 103 F.4th at 147 ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due process entitled petitioner to a bond hearing in § 1225(b) context), findings and recommendations adopted, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

Given that Petitioner applied the Mathews test in the petition, the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, and Respondent addresses the Mathews test as well,[6] the Court will apply the Mathews test in addition to addressing the bright-line rule.

### 1. Bright-Line Rule

The First, Second, and Third Circuits have "reject[ed] a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." Black, 103 F.4th at 150 (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court finds such authority persuasive and declines to adopt a bright-line rule that detention without a bond hearing is presumptively unconstitutional when it exceeds six months.

///

---

[6] Respondent also addresses the Lopez test. (ECF No. 12 at 9–10.) However, as the current record before this Court is devoid of evidence with respect to the second and third factors—likely duration of future detention and the delays in the removal proceedings caused by the petition and the government—the Court declines to apply the Lopez test.

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

### a.  Private Interest

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)). Accordingly, the first Mathews factor weighs in favor of Petitioner.

### b.  Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D.

11

Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

Although the Supreme Court has rejected the Ninth Circuit's application of the constitutional avoidance canon and its statutory interpretation of § 1225(b), the Court finds Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127 (9th Cir. 2013), informative regarding the constitutional issues before this Court. The Ninth Circuit "note[d] that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention" because the "parole process is purely discretionary and its results are unreviewable by IJs" and "release decisions are based on humanitarian considerations and the public interest." Rodriguez II, 715 F.3d at 1144. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1174 (W.D. Wash. 2023) (finding Plaintiffs "allege[d] a viable due process claim" because "the parole process available to them under 8 U.S.C. § 1182(d)(5)(A) is not a constitutionally adequate substitute for a bond hearing particularly since it does not test the necessity of detention," "does not afford the noncitizen an in-person adversarial hearing before a neutral decisionmaker where he or she may present witness testimony or evidence," does not require "the ICE detention officer [to] make any factual findings or provide their reasoning, and there is no apparent right to an administrative appeal").

Petitioner has been detained since April 22, 2025, (ECF No. 1 at 5), a period of nine months, and has not received any bond hearing before a neutral decisionmaker with authority to grant bond. Accordingly, the Court finds that the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards is high. See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("[T]he risk of an erroneous deprivation of Landeros Jimenez's liberty interest is high. He has not received any bond or custody redetermination hearing during his one-year detention. Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have ///

provided virtually no procedural safeguards at all."). Therefore, the second Mathews factor weighs in favor of Petitioner.

### c. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, it is important to stress that the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F.

Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

In sum, each of the Mathews factors weighs in favor of Petitioner. Based on the foregoing, the undersigned recommends finding that Petitioner is entitled to a bond hearing.

**C. Remedy**

Petitioner requests that this Court hold a hearing and "determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond[.]" (ECF No. 1 at 16.) Alternatively, Petitioner requests that the Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an IJ. (Id.)

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023) ("The Court further concludes that the appropriate remedy here is a bond hearing, and that an IJ, not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

The Court now turns to the burden of proof at the bond hearing and which party should bear such burden. Petitioner argues that the government must bear the burden of proof by clear and convincing evidence that Petitioner poses a danger or flight risk, citing to citing to Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011). (ECF No. 1 at 13.) Having "previously applied the canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply

14

with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even recognized that Singh was based "on general principles of procedural due process, reasoning that a detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

The undersigned recommends that the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. See A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (recommending that "Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which Respondent must justify Petitioner's continued detention by clear and convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community"). In the event Petitioner is determined not to be a danger to the community and not to be so great a

flight risk as to require detention without bond, the IJ should consider Petitioner's financial circumstances or alternative conditions of release. See Hernandez, 872 F.3d at 1000 ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## III.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED;

2. Respondent's motion to dismiss (ECF No. 12) be DENIED; and

3. Petitioner be released unless Respondent schedules a bond hearing before an immigration judge to be held within THIRTY (30) days that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which

    a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203, and

    b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **fourteen (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and

serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 27, 2026**        /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

17